United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 9, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-20476
Summary Calendar
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

ISIDRO ARAUJO, also known as Wilfredo Hernandez,

                                        Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-01-CV-1023
USDC No. H-98-CR-78-1
--------------------

Before BARKSDALE, EMILIO M. GARZA and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Isidro Araujo, a federal prisoner (# 79059-079), appeals

from the district court's denial of his 28 U.S.C. § 2255 motion

to vacate his convictions and sentences for conspiracy to possess

with intent to distribute more than five kilograms of cocaine and

possession of more than five kilograms of cocaine with intent to

distribute.  Araujo was granted a certificate of appealability as

to his claim that his trial attorney performed ineffectively by

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

denying Araujo his constitutional right to testify on his own behalf.

Araujo has asserted that, although counsel initially told him that he could testify at trial and that he would prepare him to do so, and although Araujo had told counsel every day of trial that he wanted to testify, counsel ultimately told him not to worry about testifying and rested the defense's case without calling Araujo to the stand. Araujo, a citizen of the Dominican Republic who at the time of trial had been in the United States for only six years, has asserted that he was not aware that his right to testify was a constitutional one and that he did not know that he could insist on testifying despite counsel's strategic decision that he not do so. Araujo submitted a sworn declaration in which he attested to these facts. The Government did not submit an affidavit or declaration from counsel.

To prevail on a claim of ineffective assistance of counsel, a movant must show (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 689-94. When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To show Strickland prejudice, a movant must demonstrate that counsel's errors were so serious as to "render[ ] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). A failure to

establish either deficient performance or prejudice defeats the claim. Strickland, 466 U.S. at 697.

A defendant's right to testify is a fundamental constitutional one and is personal to him. See Rock v. Arkansas, 483 U.S. 44, 49-52 (1987). A waiver of this right must be knowing and voluntary. Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997).

When a defendant argues that his attorney interfered with his right to testify, this court applies the Strickland standard to ineffectiveness claims concerning the right to testify. See United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001); Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001) (28 U.S.C. § 2254 case). Although under the Strickland ineffective-assistance standard "'the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight,' . . . it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002) (citation omitted). Araujo's failure to stand up in court and to insist on testifying is not dispositive of the issue whether he acquiesced in his attorney's decision that he not testify. See id. at 455 ("We resist the suggestion that we ought to insist that a defendant directly address the court at the pain of waiver to assert his right to testify when his counsel will not abide his decision.").

Because Araujo filed a sworn declaration asserting that counsel effectively deprived him of his right testify and because the Government did not file any evidentiary materials in response, it is arguable that the district court erred in concluding, without further developing the facts, that Araujo's failure to testify was "more likely" the product of counsel's persuasion that such was a better strategy. See United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) (observing that this court has not yet decided what degree of substantiation is necessary to trigger an evidentiary hearing in a 28 U.S.C. § 2255 right-to-testify claim).

Even if Araujo could show that counsel performed deficiently under Strickland by effectively denying Araujo his right to testify, Araujo still must establish that the deficient performance prejudiced his defense. Mullins, 315 F.3d at 456. Araujo has not succeeded in making this showing. In his sworn declaration, Araujo asserted that he would have testified that he knew nothing about the 9.5 kilograms of cocaine that he and a codefendant, Delgado, retrieved from the apartment that Araujo had sub-leased to a third man, Ramiro Guerrero, until he and Delgado entered the apartment minutes before. During trial Araujo had attempted to convince the jury that agents had misidentified him as the man bringing the cocaine *into* the apartment earlier that day; on cross-examination of Government agents, Araujo's counsel tried to raise the possibility that the man agents had seen was in fact Guerrero.

The evidence offered by the Government showed that, when apprehended outside the apartment in the early evening of February 11, 1998, Delgado was carrying the 9.5 kilograms of cocaine and Araujo was with him. Araujo told an arresting officer that the cocaine belonged to a man named "Ramiro," who had asked him to pick it up. At that time Araujo also offered to give information about narcotics traffickers and people involved in money-laundering if the Assistant United States Attorney could guarantee his release.

In his sworn declaration, Araujo asserted that, if he had been called to the stand, he would have testified as follows: On February 11, 1998, Araujo had not been at the apartment prior to the time he and Delgado had been stopped by the police, but instead had been at his new house all day; Guerrero called him that afternoon and told him that a family emergency required him immediately to vacate the apartment and return to the Dominican Republic; Guerrero asked Araujo to meet his friend Delgado so that Araujo and Delgado could together remove Guerrero's belongings from the apartment; although Araujo thought Delgado would have a truck for moving the items, he was surprised to see Delgado was driving a Honda Accord; and as soon as the two men entered the apartment, Delgado, who apparently had never been there before, asked Araujo where the air-conditioning vent was. (The cocaine was apparently stored in the vent.) Araujo stated that until that moment he did not know that drugs were in the apartment and that, had he known Delgado was going to pick up drugs, he would have called the police.

It is true that this proposed testimony would have been the only trial evidence to support affirmatively the defense theory that Araujo had not been present at the apartment prior to the early evening of February 11, 1998.  Araujo did not explicitly dispute, however, the post-arrest statements that had been attributed to him by an arresting officer.  Those statements were in conflict with Delgado's proposed testimony that he did not know the drugs were at the apartment.  Moreover, although Araujo stated in his sworn declaration that he would have called the police had he known cocaine was in the apartment, he does not explain why did not in fact do so when he realized why Delgado had taken him there.  In short, aspects of Araujo's proposed testimony appear incredible and would have been subject to vigorous and, in all likelihood, damaging cross-examination.  We accordingly conclude that, even if it is assumed <u>arguendo</u> that Araujo has demonstrated that trial counsel performed deficiently by denying him his right to testify, Araujo has not demonstrated that this attorney error prejudiced him under <u>Strickland</u>.  We thus AFFIRM the judgment of the district court.

AFFIRMED.